IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| MEDICAL SPECIALTIES CENTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GMAC COMMERCIAL MORTGAGE ) <br> CORPORATION, as servicer for ) <br> LASALLE NATIONAL BANK, trustee ) <br> for MERRILL LYNCH MORTGAGE ) <br> INVESTORS, INC., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.: 5:03CV38-McK |

## NOTICE OF REMOVAL

Defendant GMAC Commercial Mortgage Corporation ("GMACCM"), pursuant to 28 U.S.C. §§ 1441 and 1446, submits this Notice of Removal, and states in support thereof as follows:

1. On or about February 20, 2003, Medical Specialties Center filed a "Complaint for Declaratory Judgment" against GMACCM in the Superior Court Division of North Carolina, Catawba County, captioned *Medical Specialties Center v. GMAC Commercial Mortgage Corporation, as Special Servicer for LaSalle National Bank, As Trustee for Registered Holders of Merrill Lynch Investors Inc.*, No. 03 CvS 504 (the "Complaint"). The Complaint sought a declaratory judgment relieving plaintiff from the terms of a Note calculating the amount of the Prepayment Premium that plaintiff is required to pay in connection with any early payoff on the Note. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon defendant in this action are attached hereto as Exhibit A.

2. This Notice of Removal is premised upon this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Removal is proper because, as set forth below, GMACCM's request for removal is timely, in that GMACCM has filed this notice within 30 days of receiving plaintiff's pleading; complete diversity exists; and the amount in controversy is approximately $920,000, which is in excess of the statutory minimum.

### Timeliness

3. The Removal statute requires that notices of removal shall be filed "within 30 days after the receipt by defendant. . . of a copy of the initial pleading." *See* 28 U.S.C. § 1446(b). GMACCM first received a copy of the Complaint in this matter at the earliest on February 21, 2003, one day after the Complaint was filed. GMACCM filed its Notice of Removal in the North Carolina state court and this Court on March 21, 2003, or within 30 days after GMACCM first received plaintiff's pleading. Thus, GMACCM has met the Removal statute's timeliness requirement.

### Complete Diversity

4. The Removal statute also requires that where removal is founded upon grounds other than federal question jurisdiction, the state court action "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." *See* 28 U.S.C. § 1441(b). In the instant case, each defendant is a citizen of a different state than the state where plaintiff is a citizen and where the action was brought.

5. According to the Complaint, plaintiff Medical Specialties Center is a North Carolina Partnership with its principal place of business in Hickory, North Carolina. Complaint at ¶1.

6. Defendant GMACCM is a California corporation with its principal place of business in Horsham, Pennsylvania. Therefore, GMACCM is not "a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b).

7. Defendant LaSalle Bank National Association ("LaSalle") (which was incorrectly denominated in the Complaint as "LaSalle National Bank") is a national banking association for purposes of 28 U.S.C. § 1348. LaSalle has its principal place of business in Illinois. LaSalle also does not operate any branch offices in North Carolina. Therefore, LaSalle is not "a citizen of the State in which the action is brought" and the requirements of 28 U.S.C. § 1441(b) have been met. See *Firstar Bank v. Faul*, 253 F.3d 982, 994 (7th Cir. 2001); *First Union Corp. v. American Casualty Co. of Reading, PA*, 222 F.Supp.2d 767, 769-70 (W.D. N.C. 2001); *McKinney v. Board of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). Moreover, as discussed *infra*, LaSalle is a nominal defendant in this action and has not been served with process, so complete diversity as to LaSalle is not required in any event.

## All Defendants Join in Removal

8. LaSalle is the Trustee for the Registered Certificateholders of Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-through Certificates Series 1995-C2, the successor in title to the Note which is the basis for plaintiff's claim. GMACCM is the Master Servicer on the Note for LaSalle under a Pooling and Servicing Agreement (the "PSA") dated October 1, 1995.

9. Pursuant to the PSA, GMACCM has sole authority to service and administer the Note forming the basis of plaintiff's claim. The PSA also provides that GMACCM has sole authority to appear in and defend any legal action brought under the Note, and that LaSalle, as Trustee, is not obligated to appear in or defend any such legal action.

10. GMACCM therefore has full authority to remove this action on behalf of LaSalle as well as itself, and indeed is required to do so on behalf of LaSalle pursuant to the PSA. Based on the foregoing, LaSalle is simply a nominal defendant in this action, and its consent to removal is not required in any event because it has not been served with process in this case.

## Amount in Controversy

11. The Complaint states on its face that GMACCM calculates that plaintiff must pay a "Prepayment Premium" of approximately $925,000 in connection with an early payoff of the Note. Plaintiff, on the other hand, contends the Prepayment Premium should be approximately $5,335. Thus, the Complaint pleads an amount in controversy of approximately $920,000, and this sum meets the diversity jurisdiction statute's requirements. See 28 U.S.C. § 1332(a).

## Notice

12. A copy of this Notice of Removal shall be filed with the Clerk of the Superior Court Division of Catawba County, North Carolina, promptly after filing with this Court, and written notice and copies of this Notice shall be served on counsel for plaintiff in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, defendant GMACCM hereby removes this action from the Superior Court Division of Catawba County, North Carolina, case no. 03 CvS 504, to the United States District Court for the Western District of North Carolina, Statesville Division.

This the 21 day of March, 2003.

*Mary K. Mandeville*
Mary K. Mandeville
NC State Bar No.: 15959

*Eric H. Cottrell*
Eric H. Cottrell
NC State Bar No.: 21944
MAYER, BROWN, ROWE & MAW
214 North Tryon Street, Suite 3800
Charlotte, North Carolina 28202
704-444-3500
Attorneys for Defendant
GMAC Commercial Mortgage Corporation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **NOTICE OF REMOVAL** was served on the plaintiff by U.S. Mail delivery, and addressed as follows:

Thomas C. Morphis, Sr.
Tate, Young, Morphis, Bach & Taylor, LLP
400 Second Avenue, N.W.
Hickory, NC 28603-2428
(828) 324-2431 (fax)

This the 21 day of March, 2003.

_____
Eric H. Cottrell

40078452 42000263

96-1094934

# STATE OF NORTH CAROLINA

CATAWBA County

File No. 03 CvS 504

In The General Court of Justice
☐ District  ☒ Superior Court Division

| Name of Plaintiff | |
|---|---|
| MEDICAL SPECIALTIES CENTER | **CIVIL SUMMONS** |
| Address | |
| City, State, Zip | ☐ ALIAS AND PLURIES SUMMONS |
| VERSUS | G.S. 1A-1, Rules 3, 4 |
| Name of Defendant(s) | Date Original Summons Issued |
| GMAC COMMERCIAL MORTGAGE CORPORATION as Special Servicer for LA SALLE NATIONAL BANK as Trustee for the Registered Holders of MERRILL LYNCH MORTGAGE INVESTORS, INC. Mortgage Pass-through Certificates, Series 1995-C2 | Date(s) Subsequent Summon(es) Issued |

To Each Of The Defendant(s) Named Below:

| Name And Address of Defendant 1 | Name And Address of Defendant 2 |
|---|---|
| GMAC COMMERCIAL MORTGAGE CORPORATION<br>C/O GMAC COMMERCIAL MORTGAGE<br>150 South Wacker Drive #2800<br>Chicago, IL 60606<br><br>ATTN: CMBS LOAN SERVICING | LA SALLE NATIONAL BANK AS TRUSTEE<br>C/O GMAC COMMERCIAL MORTGAGE<br>150 South Wacker Drive #2800<br>Chicago, IL 60606<br><br>ATTN: CMBS LOAN SERVICING |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff) | Date Issued | Time | |
|---|---|---|---|
| THOMAS C. MORPHIS, SR.<br>TATE, YOUNG, MORPHIS, BACH & TAYLOR, LLP<br>P. O. Drawer 2428<br>Hickory, NC 28603<br>(828) 322-4663 | 2-20-03 | 9:30 | ☒ AM ☐ PM |
| | Signature | | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | | |

| ☐ ENDORSEMENT | Date of Endorsement | Time | |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ AM ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | | |

NOTE TO PARTIES: Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

97575.1

STATE OF NORTH CAROLINA     FILED     IN THE GENERAL COURT OF JUSTICE
03 FEB 20 AM 9: 35 SUPERIOR COURT DIVISION
COUNTY OF CATAWBA     FILE NO.: 03 CvS 504

            C.S.C.

| | |
|---|---|
| MEDICAL SPECIALTIES CENTER, ) | |
| A North Carolina General Partnership; ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| vs. ) | COMPLAINT |
| ) | for |
| GMAC COMMERCIAL MORTGAGE ) | DECLARATORY JUDGMENT |
| CORPORATION as Special Servicer ) | |
| For LA SALLE NATIONAL BANK ) | |
| As Trustee for the Registered Holders of ) | |
| MERRILL LYNCH MORTGAGE ) | |
| INVESTORS, INC. ) | |
| Mortgage Pass-through Certificates ) | |
| Series 1995-C2 ) | |
| ) | |
| *Defendants* ) | |

       NOW COMES Plaintiff, MEDICAL SPECIALTIES CENTER, a North Carolina General Partnership, pursuant to Rule 57 of the North Carolina Rules of Civil Procedure, and complains of Defendants, alleging:

       1.     The Plaintiff, MEDICAL SPECIALTIES CENTER, is a North Carolina General Partnership with offices in and doing business in Catawba County, North Carolina.

       2.     Defendants, GMAC COMMERCIAL MORTGAGE CORPORATION as Special Servicer for LA SALLE NATIONAL BANK As Trustee for the Registered Holders of MERRILL LYNCH MORTGAGE INVESTORS, INC. Mortgage Pass-through Certificates Series 1995-C2, are the successors in title to that certain Note executed by Plaintiff on or about December 2, 1993, to Provident Life and Accident Insurance Company, a Tennessee corporation, in the original principal amount of Three Million One Hundred Thousand and No/100 ($3,100,000.00) Dollars, a copy of which is attached hereto and incorporated herein by reference as Exhibit "A".

       3.     That Defendants, as the successors in interest and title to said Note, by agreement of the parties dated, November 31, 1999, agreed that all notices required by the loan documents or by North Carolina law, shall be sent to the following address:

GMAC Commercial Mortgage
150 South Wacker Drive, #2800
Chicago, IL 60606

Attn: CMBS Loan Servicing

With a copy to:

Frandzel Share Robins & Bloom, LC
6500 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90048

Attn: Jennifer Kilpatrick, Esq.
Attn: Craig A. Welin, Esq.

That pursuant to said agreement requirement, on even date herewith, Civil Summons has been issued by Certified Mail: Return Receipt Requested, to GMAC Commercial Mortgage and Frandzel Share Robins & Bloom, LC. That the Court has jurisdiction over the parties to this lawsuit by virtue of the North Carolina Long Arm Statute and by the agreement of the parties.

4. That the original December 2, 1993, loan (Exhibit "A") was secured by, among other things, that certain Deed of Trust and Security Agreement, dated in the original loan date, given by Borrower to David R. Dorton, Trustee, recorded in Book 1860 at Page 60, et seq., in the Register of Deeds Office for Catawba County, State of North Carolina (the "Deed of Trust" herein) encumbering the real property described therein, together with all improvements thereon and certain other property described in that document (collectively, the "Property").

5. That aside from changing ownership of the Note and Deed of Trust, the loan documents have not been modified and along with the November 31, 1999, agreement of the parties, constitute the loan documents.

6. That Plaintiff, in anticipation of paying off the loan to the Defendants, secured the services of Certified Public Accountants and, later, attorneys, for the purpose of establishing the pay-off owing by Plaintiff to Defendants, including any prepayment penalties. That the intention of Plaintiff to pay off said indebtedness has been made known to the Defendants.

7. Payment by Plaintiff of its obligations to Defendant would constitute a pre-payment within the terms and conditions set forth in the Note. With respect to pre-payment, said Note provides as follows:

97556.1

> "On any installment payment date and with sixty (60) days prior written notice to the Holder hereof, Maker may prepay this Note in full, but not in part, upon payment of the Prepayment Premium (hereinafter defined). The "Prepayment Premium" shall mean the greater of one percent (1%) or an amount of money equal to the following: (a) the amount obtained by subtracting the annualized yield on a United States Treasury Bill, Note or Bond with a maturity date which occurs closest to the maturity date of this Note, as such annualized yield is reported in the Wall Street Journal on the business day preceding the date of prepayment, from eight and one-eighth (8.125%) (the "Rate Differential"); (b) multiplied by the principal balance remaining on this Note; (c) divided by 12 (to obtain the "Monthly Interest Differential") discounted to present value, using one-twelfth of the annualized U. S. Treasury Rate to reflect the right to receive the Monthly Interest Differential between the prepayment date and the maturity date of this Note. In the event of acceleration of the Note at any time and subsequent involuntary or voluntary prepayment, the Prepayment Premium shall be payable. Notwithstanding any of the foregoing to the contrary, in no event shall the Prepayment Premium exceed an amount equal to the excess, if any, of (i) interest calculated at the highest applicable rate permitted by applicable law, as construed by courts having jurisdiction thereon, on the principal balance of the Note from time to time outstanding from the date hereof to the date of such acceleration over (ii) interest theretofore paid and accrued on the Note. Any prepaid amounts specified in such notice shall become due and payable at the time provided in such notice. Under no circumstances shall the Prepayment Premium ever be less than zero."

8. Counsel for the Plaintiff made inquiry of the Defendant as to the prepayment penalty and was advised that as of December 6, 2002, that the Prepayment Premium due would be the sum of $924,521.77. A copy of said calculation by Defendant is attached hereto as Exhibit "B".

That the accountant for the Plaintiff, in conjunction with consultation with others, has calculated a prepayment penalty in the approximate sum of $5,335.15.

9. That interpretation of the prepayment penalty and calculations related thereto, set forth a claim for declaratory relief between the parties. This Court has jurisdiction over this claim pursuant to NCGS §1-253 and, further, pursuant to those recitations in the November 31, 1999, agreement of the parties, which provides that a

97556.1

claim or action arising under the Note shall be under the jurisdiction of the courts of the State of North Carolina and the United States District Courts located in the State of North Carolina.

WHEREFORE, Plaintiff respectfully prays the Court that:

1. That Declaratory Judgment be entered determining the amount of Prepayment Penalty owed by Plaintiff to Defendants if the loan is repaid using a date determined by the trier of fact in this action.

2. That the cost of this action, including reasonable attorneys fees, be taxed against the Defendants.

3. For such other and further relief as shall be just and proper.

This the 19 day of February, 2003.

TATE YOUNG MORPHIS
BACH & TAYLOR, LLP

By: _____
Thomas C. Morphis, Sr.
P. O. Drawer 2428
Hickory, NC 28603
Tel.: (828) 322-4663
State Bar #3114

ATTORNEYS FOR THE PLAINTIFF

97556.1

EXHIBIT A

# NOTE

FILED

$3,100,000.00     Hickory, North Carolina December 2, 1993

03 FEB 20 AM 9:35

FOR VALUE RECEIVED, MEDICAL SPECIALTIES CENTER, a North Carolina general partnership (hereinafter called "Maker"), hereby agrees and promises to pay to the order of PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a Tennessee corporation (hereinafter called "Holder"), at its office at Provident Building, Fountain Square, Chattanooga, Tennessee 37402, or such place as Holder may designate in writing, in lawful money of the United States of America, the principal sum of THREE MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($3,100,000.00), or so much thereof as may be advanced hereunder, together with interest thereon from the date or dates of each such advancement until maturity at the rate of eight and one-eighth percent (8.125%) per annum; such principal sum and interest to be paid as follows:

    (a) Interest only on this Note shall be due and payable on the date of disbursement, prepaying interest through December 31, 1993, inclusive; and

    (b) Thereafter, in 240 equal monthly installments of principal and interest in the amount of $26,171.32 each commencing on the first day of each and every month thereafter until the first day of January, 2014 when the entire outstanding principal balance hereof, together with all accrued but unpaid interest hereon shall become immediately due and payable.

    (c) On January 1, 2014, this Note shall finally mature and the entire balance of principal, together with all accrued but unpaid interest shall then be due and payable.

    Each of such installments shall be applied first to the payment of the interest then accrued and due on the unpaid principal balance under this Note and the remainder, if any, of each installment, subject to the prepayment provisions hereof, shall be applied to the reduction of the unpaid principal. All interest hereunder shall be calculated on the basis of a 365-day year.

    If any payment of principal or interest provided for herein is not paid when due, each and every such delinquent payment, including the entire principal balance and accrued interest in the event of an acceleration of this Note as provided below, shall bear interest to the extent permitted by law at 12.125% per annum ("Default Rate") from its due date until date of payment.

    On any installment payment date and with sixty (60) days' prior written notice to the Holder hereof, Maker may prepay this Note in full, but not in part, upon payment of the Prepayment Premium (hereinafter defined). The "Prepayment Premium" shall mean the greater of one percent (1%) or an amount of money equal to the following: (a) the amount obtained by subtracting the annualized

yield on a United States Treasury Bill, Note or Bond with a maturity date which occurs closest to the maturity date of this Note, as such annualized yield is reported in the Wall Street Journal on the business day preceding the date of prepayment, from eight and one-eighth percent (8.125%) (the "Rate Differential"); (b) multiplied by the principal balance remaining on this Note; (c) divided by 12 (to obtain the "Monthly Interest Differential"); discounted to present value, using one-twelfth of the annualized U.S. Treasury Rate to reflect the right to receive the Monthly Interest Differential between the prepayment date and the maturity date of this Note. In the event of acceleration of the Note at any time and subsequent involuntary or voluntary prepayment, the Prepayment Premium shall be payable. Notwithstanding any of the foregoing to the contrary, in no event shall the Prepayment Premium exceed an amount equal to the excess, if any, of (i) interest calculated at the highest applicable rate permitted by applicable law, as construed by courts having jurisdiction thereon, on the principal balance of the Note from time to time outstanding from the date hereof to the date of such acceleration, over (ii) interest theretofore paid and accrued on the Note. Any prepaid amounts specified in such notice shall become due and payable at the time provided in such notice. Under no circumstances shall the Prepayment Premium ever be less than zero.

If Maker shall default in the payment when due of any installment or installments as herein provided, or in the performance of any of the terms, agreements, covenants or conditions contained in the Deed of Trust and Security Agreement, Absolute Assignment of Leases and Rents, or any other instrument given to secure the payment hereof (all of which are herein referred to as the "Security Documents"), then, or at any time thereafter, the entire principal of this Note, irrespective of the maturity date specified herein, together with the then accrued interest thereon, shall, at the election of the Holder hereof, and without notice of such election, become immediately due and payable.

Upon the occurrence of a default under this Note and/or under the Security Documents, and acceleration of the indebtedness hereunder, any tender of payment by or on behalf of Maker of the amount necessary to satisfy all of such indebtedness at any time before or at any foreclosure sale shall constitute an evasion of the payment terms of this Note and shall be deemed to be a voluntary prepayment, and such payment shall be accompanied by the Prepayment Premium provided for in this Note, and Holder shall not be obligated to accept any such tender of payment unless such tender of payment includes such Prepayment Premium.

This Note is secured by a Deed of Trust and Security Agreement and an Absolute Assignment of Leases and Rents, each of even date herewith, encumbering certain real and personal property located in Catawba County, North Carolina, more particularly described

2

therein, and this Note is secured by any other instruments, now or hereafter executed by Maker in favor of Holder, which in any manner constitute additional security for this Note.

In the event any installment payment required hereunder is not paid within fifteen (15) days from and including its due date, a charge of 4% of such overdue installment may be charged by the Holder hereof for the purpose of defraying the expense incident to handling such delinquent payment. This provision shall not be deemed to excuse a late payment or be deemed a waiver of any other rights the Holder may have including the right to declare the entire unpaid principal and interest immediately due and payable.

The rights or remedies of the Holder as provided in this Note and the Security Documents shall be cumulative and concurrent, and may be pursued singly, successively, or together against the property described in the Security Documents, any other funds, property or security held by Holder for the payment hereof or otherwise at the sole discretion of the Holder. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release of such rights or remedies or the right to exercise them at any later time.

All agreements between the undersigned and the Holder hereof, whether now existing or whether hereafter arising and whether written or oral, are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of the maturity hereof, or otherwise, shall the amount paid or agreed to be paid to the Holder for the use, forbearance of detention of the money to be loaned hereunder, or advanced for the performance or payment of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to the indebtedness evidenced hereby, exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever fulfillment of any provision hereof or of any such other document, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, and if from such circumstance the Holder hereof shall ever receive anything of value deemed by applicable law to be interest in any amount that would exceed the highest lawful rate payable hereunder, an amount equal to any excessive interest shall be applied to the reduction of the principal amount owing hereunder and not to the payment of interest, and if the amount that would be excessive interest exceeds the principal balance then owing, such excess shall be refunded to the party paying the same. It is further agreed, without limitation of the foregoing, that all calculations of the rate of interest contracted for, charged, or received under this Note, or under any instrument evidencing or securing the loan evidenced hereby, that are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall

3

be made, to the extent permitted by applicable law, by amortizing, prorating, allocating, and spreading throughout the full stated term of the loan evidenced hereby, all such interest at any time contracted for, charged, or received from the undersigned or otherwise by the Holder hereof in connection with such loan so that the rate of interest on account of such indebtedness, as so calculated, is uniform throughout the term hereof. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between the parties hereto.

Maker and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness, jointly or severally waive diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor, of acceleration, of intention to accelerate, and of maturity; and they also jointly and severally hereby consent to any and all renewals, extensions or modifications of the terms hereof, including time for payment and further agree that any such renewal, extension or modification of the terms hereof or the release or substitution of any security for the indebtedness evidenced hereby or any other indulgences shall not affect the liability of any such parties for the indebtedness evidenced by this Note. Any such renewals, extension or modification may be made without notice to any of such parties.

Maker and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable on this Note, jointly and severally agree, to pay all reasonable costs of collection, including reasonable attorneys' fees and all cost of suit, in case the unpaid principal sum of this Note, or any payment of interest or principal and interest thereon or Prepayment Premium, is not paid when due, or in case it becomes necessary to protect the security for the indebtedness evidenced hereby, or for the foreclosure by the Holder of the Deed of Trust and Security Agreement or other Security Documents or in the event the Holder is made a party to any litigation because of the existence of the indebtedness evidenced by this Note, or because of the existence of the Deed of Trust and Security Agreement or other Security Documents whether suit be brought or not, and whether through courts of original jurisdiction, as well as in courts of appellate jurisdiction, or through a Bankruptcy Court or other legal proceedings.

This Note may not be amended, modified, discharged or changed, nor shall any waiver of any provision hereof be effective, except only by an instrument in writing and signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought.

Whenever used herein, the words "Maker" and "Holder" shall be deemed to include their respective heirs, personal representatives, successors and assigns. If Maker constitutes more than one party,

4

all parties which constitute Maker shall be jointly and severally liable with respect to the obligations hereunder and under any other Security Documents.

This Note shall be construed according to and governed by the laws of the State of North Carolina and the laws of the United States of America applicable to transactions in the State of North Carolina.

IN WITNESS WHEREOF, Maker has executed this Note as a sealed instrument as of the date first hereinabove written.

MEDICAL SPECIALTIES CENTER, a North Carolina general partnership (SEAL)

By: MEDICAL REAL ESTATE CORP., Managing General Partner

ATTEST:

By: /s/ Hugo L. Deaton
President

/s/ Betty S. Chastain
~~Asst.~~ Secretary

[CORPORATE SEAL]

gml/kmh/100793a
9152.009

5




# GMAC

## Commercial Mortgage

FILED
02 FEB 20 AM 9:35
CATAWBA COUNTY, C.S.C.

BY_____

December 16, 2002

**Via U.S. Mail**

Tom Morphis, Esquire
Tate, Young, Morphis, Bach & Taylor, LLP
400 Second Avenue, N.W.
Post Office Drawer 2428
Hickory, NC 28603-2428

Re: Medical Specialties Center
    GMAC Commercial Mortgage (GMACCM) Loan Number 96-1094934

Dear Mr. Morphis:

I have reviewed your letter dated November 27, 2002 regarding GMACCM's calculation of the Prepayment Premium for the referenced loan. GMACCM calculated the Prepayment Premium in accordance with the provisions set forth in the Note signed by your client. I have enclosed an updated estimate (Statement of Condition) which provides an indication of the amount necessary to prepay this loan on January 1, 2003, as requested.

With respect to the other information requested in your letter, it would be inappropriate for me to comment beyond referring you back to the Note as I am contractually prohibited from any action that could be construed to modify or waive any term or provision of the Note, Mortgage, or any other Loan Document.

In closing, I must object to your suggestion that GMACCM, as Servicer, has acted in deceptive manner. We have followed the plan reading of the Note with respect to projecting any premiums associated with the prepayment of the debt. The Prepayment Premium is a reasonable estimate of the interest income that will be lost as a result of your client's prepayment. Similarly, your client agreed, when it signed the Note and accepted the loan proceeds, that the determination of the discount rate by reference to the treasury yield was reasonable. Your client agreed to the terms of the Note and Deed of Trust in exchange for the receipt of the loan proceeds; we asking him to adhere to those terms.

If you have any further questions or concerns, please give me a call at 215-328-1434.

Thank you,

James Goodall
Vice President

Enclosures
cc Medical Specialties Center

200 Witmer Road • P.O. Box 1015 • Horsham, PA 19044-8015

Global Servicing
200 Witmer Road
Horsham PA 19044



## FOR INFORMATIONAL PURPOSES ONLY

### PROJECTED STATEMENT OF CONDITIONS

| | |
|---|---|
| MEDICAL SPECIALTIES CENTER A NC GP | GMACCM Loan No. 96-1094934 |
| 415 N CENTER ST | Investor 602 MERRILL, SERIES 1995-C2 |
| STE 102 | 208500080 |
| HICKORY NC 28601-0000 | Current Interest Rate 8.1250% |

The following data is submitted per your request of November 27, 2002

The following is NOT valid for prepayment, but represents projection for general information. Borrower retains responsibility for any payments which become due and payable on or after any payoff date. GMACCM will not be liable for any interest or penalties. Any escrows remaining after a loan is paid will be refunded via check.

**THE FOLLOWING AMOUNTS HAVE BEEN ROUNDED TO NEAREST $1**

| | |
|---|---:|
| CURRENT PRINCIPAL BALANCE As of December 16, 2002 | $ 2,289,468 |
| Interest Calculated from the last installment for an assumed payoff on January 1, 2003 | |
| INTEREST ACCRUAL PERIOD(S) TO BE PAID    12/01/02  through  12/31/02 | 15,799 |
| PREPAYMENT PREMIUM (Yield Maintenance calculation detailed on next page) | 924,522 |
| CUSTODIAL & ADMINISTRATIVE EXPENSES | 300 |
| Supplemental Charges | |
| FACSIMILE, ACCOUNT & LEGAL FEES | 10 |
| | - |
| **Projected Statement of Condition *** | **$ 3,230,099** |

Interest shown above equates to a daily rate of $ 509.64
   Property: 415  N Center St, Hickory, NC

*Does NOT represent an amount due, balance is subject to change

PLEASE Do Not Distribute to a Title or Escrow Company; not valid for determining Payoff Demand.
IMPORTANT: Yield Maintenance calculations based on variable indices may change significantly.
The above calculation does NOT assume installment payments not already received; nor release the Borrower from making such payments and confirming with all the required loan conditions until the date of payoff. This Statement of Conditions is for informational purposes only and is NOT approved for use in determining final payment amounts.

GMACCM reserves the right to charge a fee for preparing an estimated quote which includes a yield maintenance computation.

**Please continue to make your normal installment payments as required by your loan documents.**
This statement does not modify, alter or amend the terms of the loan documents nor represent a demand for payment.

Our actual payoff quote will include wiring instructions. To ensure timely posting of your funds, we request that payoffs be remitted via Bank Wire in immediately available funds. If you are unable to do so, please contact our Client Relations Department to arrange alternative payment instructions.

Should you have any questions, please contact    DENISE-LYNN BARRETT    1-888-334-GMAC

JJG
2002-1217 GS2003-01#

| Loan Number: | 96-1094934 | ESTIMATE - NOT GOOD FOR PAYOFF | |
|---|---|---|---|
| Loan Name: | MEDICAL SPECIALTIES CENTER A NC GP | | |
| | *Financial Data* | | |
| Note Rate | 8.125% | Original Debt $ | 3,100,000.00 |
| Origination Date | 12/2/1993 | Current Unpaid Principal Bal $ | 2,289,468.00 |
| Prepymt Date | 1/1/2003 | Schd Net Principal Prepaid $ | 2,279,095.58 |
| Y.M. Expiration Date | 1/1/2014 | P&I Constant $ | 26,171.32 |
| # of Pymts remaining | 132 | Scheduled Maturity | 1/1/2014 |
| GS2003-01ef | | # of Pymts remaining | 132 |

*Prepayment Restrictions outlined in your Loan Documents:*

1 Written notice is required as outlined within the loan documents.

2 The specific day the payoff can be effective is defined within your loan documents.

3 Your payoff funds must include interest as outlined in your loan documents.

4 Because of the restrictions on your ability to repay this debt, we **can not** provide a
 a daily interest per diem. Please contact us should your prepayment date change.

5 The following present value calculation requires use of a comparable yield rate, converted
 to a discount rate of [ 3.660% ] from the [ 17-Dec-02 ] Wall Street Journal

6 The Prepayment Premium due is equal to the greater of:
 One Percent of Amount Prepaid (Current UPB)  $ 22,894.68
 *OR*

 Principal Amount Outstanding at Prepayment:  2,289,468.00
 (Principal Prepaid x (note rate - disc rate))
 (A) Monthly Payment Differential equals  8,518.73
 (B) Number of Installments Prepaid:  132

 (C) Present Value of monthly Payment Differential  924,521.77

 ***Prepayment Premium Due***  $ 924,521.77